Good morning. Tracy Dressner for Petitioner Gonzalo Gonzalez. So the court raised an interesting question last week about jurisdiction. I've learned a lot in the last week. That was me. I've been on a jurisdictional kick all week. I was thinking that while I was sitting there. And then you threw in Paul's graph and sent me having PTSD from law school. It's been a bad week. I struggled with that one, too. I couldn't find any case exactly on point involving a 654 stay. Nevertheless, I believe there are three reasons why the court has jurisdiction. And the first one, and perhaps the easiest one, is that the third claim that's raised on the appeal is a cumulative error claim that says that in addition to the first two claims, there were several evidentiary errors that rendered the trial fundamentally unfair. I have a question about that, whether or not the additional cumulative errors were included in the certificate of appealability. Admittedly, the COA is a little ambiguous in that regard. But the COA granted the certificate on two discrete issues. Whether the evidence presented at trial was sufficient to convict appellant of carrying a concealed firearm. Two, whether the jury instruction on carrying a concealed firearm violated the appellant's right to due process. And then this third, whether cumulative error. Normally, the jury instruction on carrying a concealed firearm, when we're looking at cumulative error, we're looking at the errors that have been articulated by the court. So I'm curious as to why you think this COA addresses errors that are not specifically delineated in the certificate of appealability. Well, because down below in the district court, Mr. Gonzales did raise a cumulative error claim. And so I read the COA as granting him a, the COA granted him a cumulative error claim. And so I read the COA grant as granting him a COA on the cumulative error claim that he had raised below. It's curious to me that the district court would not have addressed, I mean, that the panel would not have addressed those issues. I mean, that the district court, let's see, that we wouldn't have addressed, we wouldn't have addressed those issues specifically. Well, and I acknowledge in my opening brief that it was an ambiguity, and I read it as being more expansive. But that actually, even accepting that, that maybe the COA had been limited, let's say, to the cumulative error regarding the concealed weapon, you have an issue where, in the district court, there clearly was no jurisdictional issue because he raised claims that related to both convictions. And it would seem to me that it would be kind of an anomalous result that by this Court, and Mr. Gonzales sought COA on more issues than this Court granted, including issues that dealt with the felon in possession conviction, that by virtue of granting COA on a limited number of issues, that this Court could essentially divest itself of jurisdiction. And that would be kind of an anomalous result. Well, we haven't divested ourselves of jurisdiction, have we? I mean, the problem is the Supreme Court does this all the time in a limited grant of certiorari. District courts do it in terms of certifying some issues but not others. We could expand the certificate of appealability, and I assume you wouldn't like us to do that if we conclude that it's ambiguous. But without regard to your cumulative error claim, that assumes that we find error with respect to the two issues. And if we don't, then how do we have jurisdiction to look at habeas relief on a stayed count of conviction on which he is not suffering punishment? And never will if the other counts stand. Well, then my second point would be, so under 654, the sentence is imposed. He was sentenced to 25 to life on the concealed weapon. And it was arbitrary which court, which conviction they made first and which one they stayed. It was just numbered 1, 2, 3. Number 1 was an acquittal. Number 2, the court sentenced him. Number 3 was stayed. Well, as I understand it, the problem is that 654 says pick the most serious, but in this case the punishment is the same. They were the same because they were both restricted. Exactly. So the execution of the sentence is stayed. And under California law, the possibility of custody under a stayed sentence exists up until the day the sentence for the unstayed count or counts is completed. And so Mr. Gonzales will remain in custody under the concealed weapon count until a sentence for the felon in possession count is fully served because if anything should happen at any point that would cause that sentence to be reversed or altered, he would then serve his full sentence under the concealed weapon. He's deemed convicted of this even though he wasn't sentenced, isn't he? Yes. He was convicted and the sentence was imposed. So he could, in theory, if he commits a crime while in prison, this could be alleged as a prior? That is also a possibility. He could be impeached with it if he tries to testify? I mean, you've got all the disabilities of a conviction even though we have this kind of anomalous sentencing thing. Exactly. And I actually believe, so there's not, as I said, no case I could find on point, not even in cases actually kind of close on point. But there are a number of United States Supreme Court cases on jurisdictional issue and the meaning of in custody. In the most recent one, which was in 1995 in Garlett v. Fortas, the Court said a defendant remains in custody under all of his sentences until all are served. To me, that gives this Court jurisdiction over all of Mr. Gonzalez's convictions until he has served all of his sentences because there is always the possibility that the other sentence may come into being. Now, that may be a remote possibility, but that possibility still exists. So theoretically, he could complete his term of imprisonment, be paroled, complete his term of parole, and nothing would ever happen to the state count? Correct. But, as Judge Silberman correctly points out, there are still disabilities that flow from this conviction even though he's never been punished for it. Which brings me to my third point, why I believe there's some jurisdiction. And this has to do, and I admit that this is kind of a muddled area, but since Mr. Gonzalez was sentenced, Proposition 36 was passed in California, which allows inmates under certain circumstances to challenge a three-strike sentence. There are some exclusions, and you're excluded if you have a serious felony, a violent felony, or if you're armed. In addition, during your conviction, you're armed with a firearm. And the law is in flux on that. The California Supreme Court has not ruled on any of these issues or some appellate court decisions. But what they have said is that, and this is a California Supreme Court case, that when you have a felony that is not a serious felony, but there's a gang enhancement associated with it, that it becomes a serious felony. So Mr. Gonzalez's being a gang member with active gang member with concealed weapon is arguably a serious felony under that interpretation, which would exclude him from seeking Prop. 36 relief. There is some uncertainty about whether being a felon in possession of a firearm is itself, precludes Prop. 36 relief, because there's a question about whether being in possession of a gun constitutes armed with a weapon. And there's at least one California appellate court case that says you could be in constructive possession of a gun and not be in actual possession of it, and in which case you might be qualified, whereas if you're clearly, from the record, you're holding the gun, you were armed. I'd like to finish your point, and then I want to ask you about the merits of the case. And I was going to say, in this case, what we have is we don't actually know what the grounds were for why they found him in possession of a gun. There was some testimony by this guy Parsons that he saw him, but he was pretty uncredible witness. And the jury did acquit Mr. Gonzalez of burglary. And then, remember, this was the third trial. There had been two hung juries prior to this. So this wasn't a strong case. But the gun was the gun that they associated with Mr. Gonzalez was actually found in Bush's, not in Mr. Gonzalez's possession. And we resolved that determination in the light most favorable to the conviction, which would be that that must have been his gun. I think it's his gun. It could have been his gun, but he might not. It's possible that he might be able to argue, if he didn't have his concealed gun, concealed weapon charge, which is a serious felony and precludes Prop 36 for sure, he might have an argument under justice felon in possession count that it doesn't qualify as armed with a gun because there's this possibility that the jury convicted him for possession of the gun based on him being near the bush where the gun was, but not actually being armed with it. Okay. I think I've heard enough on jurisdiction. I'm with Judge Silverman. Neither of you apparently in your arguments raised what for me on the jury instruction issue is pretty compelling, and I refer you to Supplemental Excerpts of Record 1097 and 1098. It's the court's actual transcript of what the judge said to the jury. And if you take a look at that, I have a question. You don't have it with you? I don't have it in front of me. I believe I know what the court wrote. Let me read it for you. The court says during jury instruction, as the court report has taken it down, starting at line 23, it's page 1080 of the trial transcript, Supplemental Excerpt of Record 1097, the defendant is accused in count three of having violated Penal Code Section 12025, subdivision B, subsection 3 of the Penal Code, a crime. Every person who carries a concealed weapon upon his person with knowledge of its presence. Well, let me go back. Every person who carries concealed upon his person with knowledge of its presence any pistol, revolver, or other firearm capable of being concealed upon the person who is an active participant in a criminal street gang is guilty of a violation of the Penal Code provision. In order to prove this crime, each of the following elements must be proved. One, a person carried upon his person a revolver, pistol, or other firearm being concealed upon the person. Two, the person had knowledge of the presence of the firearm. And three, the person was at the time an active participant in a criminal street gang. I read three separate admonishments to the jury about carrying a concealed weapon and one about carrying a firearm capable of being concealed. So what is the problem that would require us to declare that the findings by the district court of appeal that there was no error in the jury instruction is objectively unreasonable under AEDPA based on the record? Several answers. One is the focus is on what the court actually said the elements were. I just read you what he said. He said that. First of all, we don't know if that may be a transcription error because that's actually not what the written instruction says. Do the written instructions go to the jury? I would have to double check it, but the written instructions in my experience in 20 years of doing this, the written instructions always go to the jury in California cases. So the written instruction says capable of that number one, a person carried upon his person capable of, oh, right, capable of being concealed upon the person. That's actually how it reads, capable. But counsel, don't we look at the written instructions and the oral instructions to determine whether or not we are compelled to conclude that the instructions violated due process? Well, you look at the totality of the circumstances. And if this was the only thing that happened, that might be a valid argument. But we have a situation where both the prosecutor and Mr. Gonzalez's attorney treated the concealed weapon as a possession count. There's not a single mention of concealed in their closing arguments. They have repeatedly referred to it as possession, possession, possession, gang member with possession, possession, possession. And the jury in the verdict form says gang member in possession of a firearm. It doesn't say anything about concealed. When you have those added elements and we don't know whether the judge, whether it's a transcription error or the judge, you know, stumbled over his reading of it, but the written instruction which I believe in, I can give the site, is in my, is in the excerpts of record, the actual written instruction. There was no note sent out during jury deliberations to indicate that the jury was confused on this issue, was there? They may not have known it. If I was the jury, honestly, if I was the jury listening to this, you hear all those jury instructions. You can't really follow them. You have your written instructions in your jury room. And you think about what the attorneys argued. There was never any argument about whether it was concealed. And it's a critical issue. Kennedy. But if the jury was otherwise properly instructed based on the language that I just read to you, why is it objectively unreasonable for the California District Court of Appeal to conclude that there was no error? The actual, the court did not ever find that the instruction was there. They did some convoluted grammar thing that concealed of, you know, theirs was not as straightforward as you're saying. And, again, because that is, may have been said in an oral, in the oral transcription. And I know that. They did conclude, did they not, that there was no error in the jury? But theirs is because of a grammatical reading. It wasn't because of. But it doesn't matter why. We have to look at whether the bottom line was objectively unreasonable. The bottom line was objectively unreasonable because if you look at the jury instruction, Calgib 12.471.1, it does not say that you have to conceal it. The judge may have inadvertently read that when he said it. But that's not what the instruction says. I'm looking at page 50, which is page 6 of the District Court of Appeal's opinion. And they say in talking about the instruction, the first phrase identified by defendant qualifies the words other firearm and does not negate the element of concealment. The second phrase contains the essential element of carrying upon one's person. The instruction sufficiently instructed the jury and was not constitutional error citing to California cases. And under AEDPA review, isn't that coupled with the transcript of what the trial judge said, the end of the inquiry on federal habeas corpus? No, because they're reading of it. Assuming we're talking about the written instruction, not the court's erroneous reading of it, which leaves out the critical element, the jury instruction is ---- But we have to find that no reasonable jurist under, what is it, Richter, would conclude that the court of appeals was right here or wrong when they said that. And to me, it's a perfectly plausible reading of the record, if you couple it with what I find in the transcript. If you look at that strictly in isolation, but that's not what we have here. You look at jury instructions in their totality. You have a case where there's very little ---- there's no direct evidence of concealment. There's only supposition that it must have been concealed before they saw it above the windowsill where you can only see an upper torso. And you have the ---- this isn't a case like in, I believe it was McNeil, where the jury instruction omitted the critical element, but the prosecutor kept arguing the element. Here you have a situation where the prosecutor argues repeatedly that he was a gang member in possession. Gang member in possession. This is a possession. This is possession. Defense attorney doesn't correct them. Defense attorney keeps arguing this is possession, this is possession. No argument about why, how in this case where there's no real evidence of concealment, the jury could find it. The jury finds a verdict form that says he's a gang member in possession of a firearm. He doesn't say he's a gang member who had a concealed weapon upon his person.   And this is a case where the jury can't find evidence that he was a gang member in possession. Roberts. Kennedy. Let's suppose you're right and this conviction shouldn't stand. What happens to the ---- what happens as a practical matter? Well, I mean, that's a question I think aside from jurisdiction. There is certainly a possibility that this will never amount to anything. He's not going anywhere. Correct. His best hope ---- His sentence is not going to be recomputed. Well, that's his best ---- under California law, when you get resentenced, everything's up for grabs again. And his best hope would be that he would get back to the trial court and that the court would consider, again, his Romero motion to strike his prior. Because this judge was very troubled about sentencing the 19-year-old to this kind of sentence, and he said it was really hard and he struggled with it. And now you're in a different posture. You only have one conviction instead of two. It's a long shot, but there's certainly, if not outside the realm of possibility, that he could get a resentencing and get a better deal out of it this time. I see you're way over your time. Let's take your time. Thank you. Thank you, Ms. Dresden. Good morning, Your Honors. Christopher Beasley, Deputy Attorney General, on behalf of the Respondent. I think it's an interesting question, Judge Silverman, what you just brought up, what happens on a practical level if this court were to agree that this count should be reversed and on a practical level nothing would happen, which is one of the reasons supporting the idea that there really is no jurisdiction in this case. To step back for a moment, there is in federal court a concurrent sentencing doctrine that this court talks about in the Van Gelderen case, which still has some vitality under the United States Supreme Court's decision in Benton v. Maryland. That concurrent sentencing doctrine states that a federal court has discretion when there are concurrent sentences and only one of the sentences or one of the judgments is being challenged on habeas corpus. The judge actually has discretion to not even entertain the habeas claim as to that because the whole policy and purpose of habeas corpus is to provide some remedy or relief for unlawful punishment. But that's not a jurisdiction. That's correct. That's a discretion. That's correct. But a fociori, when we're dealing in a case like this, where it's a 654 state, there is no punishment. None has been imposed. There is no custody. Therefore, there can be no jurisdiction. Let me ask you, I'd like to ask you about the merits, if I may. Certainly. Do I understand correctly there was no direct proof that he concealed the gun on his person? There was no direct evidence that he concealed the weapon on his person. Circumstantial evidence, however. So the State proved it circumstantially by sort of process of elimination. Correct. What bothers me about the proof is I don't see where every reasonable possibility had been eliminated. For example, I don't see that there was any proof, that there was testimony or a prior statement of somebody that he had reached down, his hands were empty, reached down, pulled it up, and an inference was drawn that he must have pulled it out of his pants or something like that, which is possible. But I don't see where you've eliminated the possibility that he walked to the window with the gun in his hand, put the gun on the ground, and then went down and picked it up off the ground, just as one example. I don't see where you eliminated that as one possibility. I don't see where you eliminated the possibility that he had a holster. So, I mean, if you're going to prove it by saying we're going to prove it by process of elimination, we have two other possibilities that haven't been accounted for that I can tell. Those are not possibilities, however, Your Honor, with all due respect, that are reasonable. First of all, this is a gang member, and a gang member is not going to be walking around carrying a gun in open view with the whole world being able to see that. I saw a shooting, it looked like a gang shooting in San Francisco, I witnessed it with my own eyes. When they're shooting, certainly, but when they're walking... You're just guessing. I mean, we don't know whether they carry it around or they don't carry it around. Well, I think that if you look at the later actions of this defendant as well, that also provides circumstantial evidence supporting the notion that this was something concealed. They spurred his movements with respect to when he saw the police, the fact that he concealed it within a bandana later. What evidence, I mean, other than you think in your view gang members don't carry guns in their hands, but other than that, what else do you have to debunk that? Well, as far as the fact that the way that the evidence came out with the window frame and what Parsons testified he saw, he didn't see the defendant, and didn't testify that the defendant stooped down to pick something up off of the ground. He saw that the defendant was trying to get into the door, into the window, so no gun was in his hand, and then when he was confronted by the victim, he reached down and the only reasonable inference... He didn't say into his pants or... He didn't say where he reached down because he wouldn't have been able to see that from his vantage point. Exactly. But he reached down. And where he reached down to, because we know that there was testimony that the window was about four to five feet above the ground, he couldn't have reached down onto the ground because he would have to have disappeared from view. He just reached his hands down below the window sill and then brought the hand back up. What evidence is there that he didn't pull it out of a holster? There was no evidence on this in this case that there was a holster. Okay. But you're the guy who's trying to disprove all these possibilities by process of elimination. So he can sit there like a bump on a log and wait for you to debunk it. That's true. Okay. So what, I take it then you agree that there was no evidence that the State produced that he didn't pull the gun out of a holster? That is true. That is true. Well, then, I don't see how you've proven that it was a seal. But when you look at the reasonable inferences that were drawn by the State court, it was a reasonable inference that he did carry it concealed upon his person either in a pocket or in a waistband. And this court does it in three ways. Why is it more reasonable to assume it was in his waistband and not in a holster? What makes it more reasonable? Well, if it, again, going back to the fact that this is a gang member, if he's carrying it in a holster. Okay. I take your point. Was there testimony that gang members don't carry holsters? No, there was no testimony of that. Okay. So we're just flipping a coin. It could come from his holster. It could come from his waistband. Certainly possible. However, when we look at what the State court did and when we look on habeas and how this court reviews what the State court did, we have to look with some eye of deference. I grant you that. But I just, if there's some reason to think it was from a waistband instead of a holster, I'm all with you. If there's no more reason to think it's from a holster than a waistband, I don't know other than you use your Ouija board to figure that out. Well, I think that as a matter of just reasonable gang conduct and how gang members conduct themselves in public, they're not carrying their weapons out in public. There's a whole reason why they keep them hidden away so that they can, you know, do their surprise attacks. So it would be unreasonable to assume that he would have had it holstered in open view, whereas it is perfectly reasonable to assume that he would have had it either in a pocket or in a waistband. And so the court of appeal here held, and that was a reasonable determination based on the facts, and I don't think that, I mean, every reasonable jurist would have to disagree with that. And I don't think that that's met. And therefore Well, I mean, if you agree that there's no direct proof, and if you agree that this is proven circumstantially by eliminating all other possibilities, and if you agree that not all other possibilities have been accounted for, I'm not sure how a reasonable jurist could agree with you. Well, I don't necessarily agree that all reasonable possibilities have not been accounted for, given the fact that some of those possibilities that you've posited, with all due respect, Your Honor, seem to be somewhat unreasonable given what we know about gang members and given that it couldn't have come off of the ground because he didn't stoop all the way down to the ground, and given that it's unlikely that a gang member like this would have held his gun in a holster. Let me ask you the same question a slightly different way. At page 49 of the DCA opinion, they say, here defendant concealed the weapon by hiding it outside the window frame where Parsons could not see it. It is also most probable, almost certain, that defendant was carrying the gun concealed on his person before he brandished it in front of Parsons. Where else in the opinion can I find any recitation of the evidence to support that conclusion? That's a pretty strong statement based on what I know of the factual record. Yeah, it is a strong statement, and I think part of this also is informed by the state court's determination of state law as to what the policy is behind concealment. This was something that he carried concealed from Parsons. Just because it may have been an open view to the rest of the world does not mean that it was not concealed as to the victim. Well, how can you be carrying a concealed weapon if you're concealing it from the victim but not carrying it at the time? I mean, you can hide something from the victim, but that doesn't necessarily mean that he was carrying a concealed weapon. Well, he had to have carried it because, I mean, he had it with him. So if he had it with him, and then it's concealed from the victim, from his... Because the victim can't see it? That's right. Based on his perspective from inside the bedroom? That's correct. That's a pretty broad interpretation of 12025 liability. And that's what the court of appeal here ultimately said, that as to the victim's... Well, they concluded that he was carrying it concealed on his person before he brandished it. But they also were talking about the policy. When the court of appeal was talking about the policy considerations behind that statute, it was talking about the element of surprise. It was talking about that we're trying to forestall that. And so as to the perspective of the victim, because that firearm was concealed, as to him... I want to make sure I understand what you're saying, because we have a concealed weapon law in Arizona. It's a puzzle to hear you say what you're saying. Let's assume that he was wearing a holster, just for the sake of discussion. It's open there. He's got his gun in front of God and everybody. He's got the gun. But if he's at the window, and the window comes up to here, and the guy inside the house can't see his waistband, can't see the holster, are you saying that if it's concealed, as to the guy in the house, he's guilty of carrying a concealed weapon? That is what I'm saying, and that is... Okay. As Judge Rawlinson would say, what's your strongest case to support that? There is no case to support that, except for this one. Is there anything that supports that? There is no case that says that, except for this case, which the Court of Appeal, by implication, this case suggests that. And we know that a rule of law, a rule of state law, that's announced even on direct appeal, is binding on this Court. By implication, the Court of Appeal here was saying, because this was concealed as to this victim, and because of the policy considerations that support this legislative pronouncement that we don't allow concealed weapons, therefore, what you just said, Judge Silverman, is how the statute can be interpreted, which may seem odd, but in this case, it's how the Court of Appeal got there. Well, the citation is People v. Gonzales. Yes, which is an unpublished decision. Wow. It was how I argued it, on direct appeal. You learn something new every day on this, John. Now, with respect to the instructions, Judge Tallman, on page 24, I do cite that, those supplemental excerpts of record pages, to point out that the Court did two times, at least two times, talked about the firearm needing to be concealed upon the defendant. However, perhaps inartfully, I put it in my harmless error analysis, rather than up front, where it probably should have been more prominently displayed. Well, I mean, it just struck me as being very important in the resolution. Absolutely. Especially when we consider that we view the jury instructions as a whole. We don't parse out one part. And if we look at what the judge said, orally, and what was given in the written instructions altogether, it doesn't matter what counsel argued or said. The statements of counsel are not evidence. The statements of counsel is not the law. The law comes from the court only. All of that together, we have a jury that was adequately instructed. Okay, Mr. Beasley. I'll vacate my admonishment. Thank you. Now, on the jurisdiction piece, it would be really nice to get a rule out of this court that Section 654, barred punishment, divests the Federal Court of Jurisdiction on claims that only challenge a conviction that was stayed. Yes, Judge Silverman, you're right. There are collateral consequences that flow from such a conviction, such as later possible use as a priorable offense for three sites purposes. But collateral consequences, as this court noted in Williamson v. Gregoire, are not enough, necessarily, to constitute custody. What we're looking for is some sort of a physical restraint. Where is this fellow now? Pardon? Where is he now? One of the prisons in California. I don't know which prison he's in. He's not sitting at home watching television. No, he is in prison serving his time for the being a felon in possession of a firearm. But as to his restraint in prison on that count, he is free to come and go as he chooses with respect to his other count. He is not under any physical limitation or restraint while in prison for the felon in possession count. This may be a vagary under California criminal procedure, but why don't the Superior Court judges simply impose a sentence and then stay the execution of that sentence? That's what they do. That is what they do. Under 654, that is what they're supposed to do. People v. Duff is a California Supreme Court decision in 2010 that talks about the proper procedure. And this procedure actually has a venerable history about 50 years long, starting back from Niles, where the court is supposed to impose the sentence and then stay execution of the sentence. What's become a problem, and the appellate court in People v. Alford talked about this, is that we've become sloppy and lazy in our nomenclature, where we talk about staying the sentence, or we talk about staying the sentence or staying the execution of the sentence, and then it's, well, which is which? The proper procedure, as the California Supreme Court has said, is to impose the sentence and then stay execution thereof. And the court in Duff also talks about why some of the other ways that the courts have tried to satisfy the demands of 654, such as imposing concurrent terms, were unsatisfactory. Imposing concurrent terms is unsatisfactory because the defendant would be subject to both sentences, even though they might be served simultaneously. And that's unacceptable because the strict language of Section 654 says, you shall not be punished. It seems to be hypothetical. Suppose the governor were to pardon Mr. Gonzales on the felon in possession charge. That's off the books. He's free of that one. What would happen? He'd walk out of prison, yeah. What would happen then is that the other, what would happen is that he'd be resentenced. He's got some restraint on him. He's not free to leave the country and take off. The stay on the other term would be lifted, so that he would then proceed to serve that term in that. So he's not free to go anywhere even. I mean, he still has some kind of hold on. So why is this any different than the detainer in mailing, which is kind of hanging over the federal inmate's head, and if and when he is released or his federal conviction is vacated, he is immediately then turned over to in mailing the state of Washington to commence execution of his state sin. I don't know that case and cannot speak intelligently to it. Well, you probably don't deal a lot with detainer issues.  kind of detainer issue. Yeah. Which we have regularly. Okay. Answer Judge Tallman and then I see you're out of time. Okay. Thank you, Your Honors. I will submit. Thank you very much. Ms. Dresner, you were way over time, but if you want to take a minute, if you'd try to keep it to a minute. It's going to be hard for me, but I will try my best. And in the United States Supreme Court has held that a detainer is enough for custody that because for just that reason, that he can't, he doesn't get out of prison if the felon in possession goes away. That is keeping him in prison until the end of that sentence that he received but was stayed on the concealed weapon. And I would also analogize in terms of that there was definitely jurisdiction in the district court. Is really that any different than when somebody files a habeas petition, they're physically in custody. They get out of custody. Case gets up to the Ninth Circuit. They're no longer in custody, but the court, but the United States Supreme Court has said that alone, the fact that you had jurisdiction. He's never been in custody on this particular charge. No, but his habeas, it's not, it's the habeas petition. The court had jurisdiction over the habeas petition because the habeas petition was challenging both convictions. And that it's now not the vested of jurisdiction because it's now windowed down to other issues. You don't, you sort of have jurisdiction to lose federal habeas jurisdiction. Is it really any different than when you're in custody, you get out of custody and the court says you still have, you know, the fact that you were in custody when you started your petition. Doesn't change that. I just want to be very clear on the other issue about the jury instruction. The court has sort of merged two different issues. The State court never made a harmless error determination regarding the instructional error because they found no instructional error. So they never looked at harmless error. What we've been discussing about the probable, probabilities of whether there really was a concealed weapon or not, whether the weapon was really concealed upon this person, had to do with their finding on the insufficiency of the evidence. For the instructional error, even if the court finds there wasn't an omitted element, at best it was an ambiguous jury instruction because of the written instruction, because of the arguments of counsel, and because of the verdict form. But on habeas, it has to so infect the trial that the verdict did not be trusted. And then you, there you have the issue for, there you just have to find that these other ambiguities had a substantial and injurious effect on the jury's verdict. And given the discussion that was just had about how there really is no evidence that it was concealed upon this person, those ambiguities, including the verdict form and the arguments, were enough to cause that, to have had an effect on the jury's finding that the weapon was concealed upon Mr. Gonzales' person. Now you're confusing standards because under Estelle, we would have to find, as Judge Rollinson correctly noted, that if there was instructional error, contrary to the finding of the District Court of Appeal, that it so infected the record that it rendered the trial unfair in violation of due process. That's the test. It's not Brecht versus Abramson. It's a different test. It's a tougher test. I actually, I disagree. I believe that Brecht is the right standard for jury instructional error, whether it's an ambiguous one or an omitted one. I thought Estelle was the case on instructional error. Estelle B. Why? That is, but then when you come down to it, you have to find Brecht wasn't a jury instruction case, was it? Brecht versus Abramson. No, Brecht is the standard for review on AEDPA once you have a finding of constitutional error. I think that you and I are talking past one another. The problem with your argument is that Estelle says that we don't have jurisdiction, even on federal habeas review, to review and overturn the state law that the instruction was sufficient, unless we conclude that the error violated, the instruction violated the federal constitution and so tainted the trial that it completely deprived the defendant of a fair trial in violation of his due process right. Even if that's the correct standard, you couldn't find a more obvious case where you have, as the Attorney General has conceded, no direct evidence of concealment. Well, because that's circumstantial evidence. How could that tainted jury instruction not have fundamentally deprived them of a fundamentally fair trial? That's the question. When you don't really have any evidence on the issue that was the ambiguity. Okay. I guess that's where we're going to leave it. Thank you. Thank you. Thank you. The case is discarded. You are submitted. We'll stand in recess for this session. Thanks to Blanca for her good work this week.
judges: SILVERMAN, TALLMAN, RAWLINSON